UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEON DAVIS, <br><br> Plaintiff, <br><br> v. <br><br> DR. JAQUELINE MITCHELL and DR. RICHARD ORENSTEIN, <br><br> Defendants. | Case No. 19-CV-3212 <br><br> Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiff Deon Davis sues two dentists working at Stateville Correctional Center in 2019 under the Eighth Amendment, alleging that they were deliberately indifferent to his serious medical needs. [44]. Defendants Mitchell and Orenstein move now for summary judgment. [116]; [119]. For the reasons explained below, this Court grants Defendants' motions.

### SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id*. After a "properly supported motion for summary judgment is made,

the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Id*. at 250 (quoting Fed. R. Civ. P. 56(e)).

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [ ] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir. 2021) (quotation omitted). The Court "must refrain from making credibility determinations or weighing evidence." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020) (citing *Anderson*, 477 U.S. at 255). In ruling on summary judgment, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.*

## BACKGROUND

The Court takes the following background facts from Defendants' statements of facts [117]; [120], Plaintiff's responses to Defendants' statements of facts [130]; [132], Plaintiff's statement of additional facts [*id.*], and Defendants' responses to Plaintiff's statement of additional facts [140]; [151].

Plaintiff Deon Davis was incarcerated within the Illinois Department of Corrections ("IDOC") during the relevant time frame—June 9, 2017 to September 12, 2017. [117] ¶¶ 1, 30. During the relevant time, Defendants Richard Orenstein and

2

Jaqueline Mitchell were dentists contracted to provide certain medical treatment at Stateville Correctional Center ("Stateville").[1] *Id.* ¶¶ 6, 10. Dr. Mitchell retired from her employment at Stateville on July 31, 2017. *Id.* ¶ 8, [120] ¶ 14.

On June 5, 2017, Plaintiff was seen in the dental clinic for his biannual exam. [117] ¶ 10. During the physical exam, it was noted that Plaintiff had cavities at tooth #4 and #15. *Id.* Plaintiff's tooth #4, in particular, had a deep cavity. *Id.* ¶ 13; [130] ¶¶ 1, 3. A cavity is considered deep if the decay has entered the pulp, where nerves and roots are located, or is close to doing so. [130] ¶¶ 4-5. When decay is close to the nerve, the cavity can cause the nerve and blood supply to die. It can also abscess, causing the patient swelling and pain. *Id.* ¶ 5.

On June 9, 2017, Plaintiff was seen by Dr. Orenstein to receive fillings for both tooth #4 and tooth #15. [117] ¶ 11. Dr. Orenstein administered a numbing agent prior to beginning the filling procedure around Plaintiff's tooth #4 twice. *Id.* Dr. Orenstein then filled Plaintiff's tooth #4 by placing Dycal, ZOE B&T and Copalite, and eventually placing an amalgam filling on the tooth's surface. *Id.* During the visit, Dr. Orenstein completed the filling procedure for tooth #4 only. *Id.* Dr. Orenstein noted that Plaintiff was very nervous and repeatedly jumped out of the chair during the appointment. [117] ¶ 12. As such, Plaintiff had to be rescheduled for a filling procedure for tooth #15. *Id.* Approximately one week later, Plaintiff refused dental treatment for tooth #15. *Id.* ¶ 14.

---

[1] Dr. Orenstein was employed by Wexford Heath Services ("Wexford"), a private corporation contracted to provide certain medical treatment to individuals within the custody of the IDOC. [117] ¶ 6. Dr. Mitchell was employed by IDOC. [120] ¶ 2.

3

According to Plaintiff, he refused treatment for tooth #15 because of the painful experience during Dr. Orenstein's treatment of tooth #4. [130] ¶ 12. Plaintiff notes that Dr. Orenstein used a drill bit to prepare the tooth for a filling. *Id.* ¶ 8. According to Plaintiff, while Dr. Orenstein was drilling his tooth #4, he felt a jolt on the right side of his face and head, causing him to jump out of the dentist's chair. *Id.* ¶ 12. Plaintiff testified he immediately informed Dr. Orenstein of the pain, and Dr. Orenstein told Plaintiff that he drilled deep into the tooth and hit the nerve. *Id.* Dr. Orenstein does not recall telling Plaintiff he hit a nerve. [140] at ¶ 12.

On June 14, 2017, Plaintiff wrote a letter addressed to Dr. Mitchell informing her of the pain resulting from Dr. Orenstein's treatment of his tooth #4. [130] ¶ 14. Dr. Mitchell testified she never received a letter from Plaintiff. [120] ¶ 5. On June 23, 2017, Plaintiff was seen at the dental clinic by Dr. Garg for a filling procedure on tooth #15. At that time, Plaintiff again refused dental treatment because he was anxious. [117] ¶ 15.

On July 7, 2017, Plaintiff was seen again by Dr. Orenstein to complete the filling procedure on tooth #15. *Id.* ¶ 17. At that appointment, Plaintiff refused treatment and wished to be rescheduled, telling Dr. Orenstein that he was experiencing pain. *Id.* Dr. Orenstein performed a physical examination checking cold sensitivity, noting it was cold to the touch. *Id.* He recommended sensitivity toothpaste to Plaintiff, which could be purchased at the inmate commissary. *Id.* After prescribing the toothpaste, Dr. Orenstein intended to wait six to eight weeks to see if Plaintiff's sensitivity resolved itself. *Id.* ¶¶ 18-19.

4

On July 13, 2017, Plaintiff was seen by Dr. Mitchell. [120] ¶ 9. She replaced the amalgam filling on tooth #4 with a medicated filling. *Id.* ¶ 10. Dr. Mitchell did so because she intended to shield Plaintiff's pulp from sensitivity. [117] ¶ 20. Two days later, the medicated filling fell out while Plaintiff was brushing his teeth. *Id.* ¶ 22.

On July 18, 2017, Plaintiff was seen by a dentist named Dr. Saffold related to tooth #4. *Id.* ¶ 23. According to Dr. Saffold, he saw Plaintiff for a filling appointment on tooth #4, but it already been filled with a temporary medicated filling. *Id.* Dr. Saffold testified that Plaintiff declined removal of the medicated filling. *Id.* On July 20, 2017, Plaintiff was again seen by Dr. Saffold. Dr. Saffold checked on Plaintiff's medicated filling in tooth #4 and inquired about any ongoing issues. *Id.* Plaintiff indicated he was no longer experiencing tooth sensitivity and was not feeling pain at that time. *Id.* However, Plaintiff testified he felt pain the next day while eating. [130] ¶ 21.

On July 25, 2017, Plaintiff was seen in the dental clinic by an unknown provider related to treating his tooth #15. [117] ¶ 25. On August 1 and 3, 2017, Plaintiff was scheduled to be seen again in the dental clinic, but both appointments were rescheduled due to a security level 1 lockdown. *Id* ¶ 26.

On August 8, 2017, Plaintiff was seen by Dr. Saffold. *Id.* ¶ 27. He was scheduled to have a filling procedure on tooth #15. *Id.* Plaintiff refused on-site treatment and appeared anxious. [130] ¶ 25. Dr. Saffold scheduled Plaintiff for a possible extraction on September 12, 2017. *Id.*

5

On August 24, 2017, Plaintiff was seen by Dr. Orenstein related to his pain in tooth #4. [117] ¶ 28. Dr. Orenstein noted Plaintiff was requesting a referral for outside treatment related to his pain. *Id*. The next day, Plaintiff was again seen by Dr. Orenstein and provided a referral exam. Dr. Orenstein prescribed Plaintiff 400 mg of ibuprofen and submitted a referral request to Wexford, requesting Plaintiff be sent offsite to Joliet Oral Surgeons for extraction of tooth #4 with IV sedation. *Id*. ¶ 29. Dr. Orenstein's referral was approved on September 7, 2017. [130] ¶ 127. On September 12, 2017, Plaintiff was seen at Joliet Oral Surgeons by Dr. Glen Schieve for the extraction of tooth #4. [117] ¶ 30. The extraction was successful, and Dr. Schieve prescribed Tylenol No. 3 for Plaintiff's pain. *Id*.

Plaintiff notes he was feeling constant pain during the relevant time frame and relayed this information to both Dr. Mitchell and Dr. Orenstein. [130] ¶¶ 14, 16, 17. Plaintiff described his pain as "extreme", going through his "teeth up to [his] brain". *Id*. ¶ 23. He also testified that he repeatedly asked to be sent offsite for dental treatment beginning in July. *Id*. ¶¶ 16, 19, 22, 23, 25, 26.

Plaintiff brings his amended complaint under 42 U.S.C. § 1983 alleging that Defendants were deliberately indifferent to his serious medical needs in contravention of the Eighth Amendment. [44]. Defendants deny liability and move for summary judgment. [116]; [119].

## ANALYSIS

Defendants move for summary judgment, arguing that: (1) Plaintiff has not raised a genuine issue of material fact on his Eighth Amendment claim; and (2) the

6

qualified immunity doctrine protects Defendant Mitchell from liability. [118]; [121]. The Court analyzes each set of claims in turn below.

I. **Eighth Amendment Standard**

The Eighth Amendment requires prison officials to provide healthcare to incarcerated inmates who cannot obtain healthcare on their own, *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653 (7th Cir. 2021), and imposes liability on prison officials who act with deliberate indifference to a substantial risk of serious harm to inmates, *Eagan v. Dempsey*, 987 F.3d 667, 693 (7th Cir. 2021). The deliberate indifference standard encompasses both objective and subjective elements: "(1) the harm that befell the prisoner must be objectively, sufficiently serious and a substantial risk to his or her health or safety, and (2) the individual defendants were deliberately indifferent to the substantial risk to the prisoner's health and safety." *Eagan*, 987 F.3d at 693 (quoting *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006)); *see also Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021).

The objective component requires Plaintiff to demonstrate that he possessed a medical condition that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021) (quoting *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012)). The subjective element, on the other hand, requires Plaintiff to prove that Defendants acted "with a 'sufficiently culpable state of mind.'" *Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 752 (7th Cir. 2021) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

Mere negligence will not rise to the level of deliberate indifference. *Rosario v. Brown*, 670 F.3d 816, 821-22 (7th Cir. 2010) (citation omitted). The Seventh Circuit has characterized the subjective standard as a "high hurdle" because a plaintiff must demonstrate "something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020) (internal quotation marks omitted). In other words, a defendant must have made a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* (quoting *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008)).

## II.  Plaintiff Raises a Triable Issue on the Objective Element

Initially, the parties dispute whether Plaintiff's deep cavity on tooth #4 is objectively serious and can rise to the level of an Eighth Amendment violation. Generally, the Seventh Circuit has held that "dental care is one of the most important medical needs of inmates." *Wynn v. Southwards*, 251 F.3d 588, 593 (7th Cir. 2001) (citing *Ramos v. Lamm*, 639 F.2d 559, 576 (10th Cir. 1980)). A deep cavity describes decay in proximity to pulp, which is where nerves and roots are located. [130] ¶¶ 4-5. "Tooth decay can constitute an objectively serious medical condition because of pain and the risk of infection." *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010).

The parties dispute whether Plaintiff suffered from "tooth sensitivity" or pain from Plaintiff's deep cavity. Defendants claim Plaintiff's allegations were limited to complaining about tooth sensitivity and pain only when consuming cold foods or

8

beverages. [118] at 5. To the contrary, Plaintiff has offered evidence that he experienced "extreme" pain, with the "pain going up to [his] brain". [130] ¶ 23. Plaintiff's evidence that he was in extreme pain coupled with undisputed evidence that deep cavities can cause the symptoms Plaintiff experienced (i.e., tooth decay) creates a genuine dispute on the objective element. *See Berry*, 604 F.3d at 440 (finding tooth decay is sufficient to survive summary judgment on the objectively serious medical condition prong.).

The cases cited by Defendant Orenstein are inapposite and ignore Plaintiff's version of events, citing cases where the plaintiff merely complained of tooth sensitivity. *See Green v. Pollard*, 335 F. App'x 612, 614 (7th Cir. 2009) (reasoning the plaintiff only described aching in his tooth and a sensitivity to hot and cold temperature); *Munson v. Newbold*, 2020 WL 6889246 at *6 (S.D. Ill. 2020) (granting summary judgment where the plaintiff provided little basis for the court to find his sensitive tooth constituted a serious medical need or posed a serious risk to the plaintiff's health.); *Mayan v. Administrator v. Waupun*, 2008 WL 4830542, at *4 (E.D. Wis. 2008) (same). The case cited by Defendant Mitchell is also distinguishable. In *Poff v. Schettle*, 2017 WL 2728430, *at 5-6 (E.D. Wis. 2007), the plaintiff simply chipped his tooth. He "did not complain of trouble eating or sleeping". *Id*. Here, Plaintiff suffered from a deep cavity, which caused him extreme pain (including when eating and drinking), coupled with an ongoing risk of more serious harm such as infection or further tooth decay. The record indicates Plaintiff may have even had an infection, as he was prescribed antibiotics. [130] ¶ 25 (citing [117-5] at 20:10-18 (Dr.

9

Schieve deposition testimony) "Antibiotics are typically used to treat infection . . . my impression from what the comments say is that he had pain, and he was placed on pain medication and antibiotics."). Plaintiff's treaters believed the condition was sufficiently serious such that the tooth had to be removed, evidencing a risk of more serious harm if tooth #4 continued to decay further.

Accordingly, Plaintiff has met his burden to show a genuine dispute of material fact as to the objective prong of the analysis.

### III. Plaintiff Does Not Raise a Triable Issue on the Subjective Element

To create a genuine issue of material fact on the subjective element for a deliberate indifference claim, Plaintiff must adduce evidence that Defendants were "both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and he must also have drawn the inference." *Passmore v. Josephson*, 376 F. Supp. 3d 874, 883 (N.D. Ill. 2019) (quoting *Gray v. Hardy*, 826 F.3d 1000, 1008 (7th Cir. 2016)). This standard "requires something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020).

The record shows that Plaintiff was seen repeatedly throughout the relevant time period by multiple treaters in an attempt to fill his cavities and alleviate his

10

pain. Nevertheless, Plaintiff disputes the effectiveness of the treatment he received, and the Court addresses each argument in turn.

*A. Dr. Orenstein*

Plaintiff argues that there is a genuine dispute as to (1) whether Dr. Orenstein met the standard of care when he disregarded the reality of Plaintiff's deep cavity and continued as if Plaintiff suffered from only tooth sensitivity, and (2) treated Plaintiff like any other patient even though he had anxiety. [131] at 8-12.

The Seventh Circuit has acknowledged that it is difficult to ascertain when a prison official has actual knowledge of a substantial risk of harm and disregarded that risk because "rarely will an official declare 'I knew this would probably harm you and I did it anyway!'" *Petties v. Carter*, 863 F.3d 722, 728 (7th Cir. 2016). Courts must thus look to circumstantial evidence and the totality of care. *Id*. Several circumstances can evidence deliberate indifference, including (1) a prison official's decision to ignore a request for medical assistance, *id*., (citing *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)); (2) a prison official's decision that is a "substantial departure from accepted professional judgment, practice or standards", *id*. at 729, (citing *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 989 (7th Cir. 1998)); (3) a circumstance where a prison official persists in a course of treatment known to be ineffective, *id*. at 730, (citing *Walker v. Peters*, 233 F.3d 494, 499 (7th Cir. 2000)); and (4) "an

inexplicable delay in treatment which serves no penological interest". *Id.*, (citing *Grieveson v. Anderson*, 538 F.33d 763, 779 (7th Cir. 2008)).

Here, there is no evidence that Dr. Orenstein ignored Plaintiff's request for medical assistance. Although Plaintiff requested to be sent offsite, "a prisoner is not entitled to receive unqualified access to healthcare." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). There is also no evidence that Dr. Orenstein's decision to place an amalgam filling on tooth #4 or prescribe sensitivity toothpaste and wait to see if that alleviated the issue threatened Plaintiff with serious harm or substantially departed from accepted professional judgment, practice, or standards. Plaintiff disputes this and argues that Dr. Orenstein should have taken a different approach and placed a pulp cap. [131] at 10-11. But he offers no evidence as to why that is so. Nor does Plaintiff show that this belief represents such a substantial departure from accepted professional standards that it's reasonable to infer that Dr. Orenstein did not base his decision on sound medical judgment. *See Holloway v. Delaware County Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012) (reasoning the plaintiff did not offer evidence to show the defendant doctor departed from accepted professional standards).

Further, there is no evidence that Dr. Orenstein persisted in an ineffective course of treatment. To the contrary, he referred Plaintiff offsite once he concluded that Plaintiff needed to have his tooth removed. Finally, there was no delay in Plaintiff's treatment. From June to September, when Plaintiff's tooth #4 was surgically removed, he was seen at the dental clinic approximately ten times. The only times Plaintiff was scheduled and unable to be seen were when he himself

12

refused treatment, or the facility was on lockdown (and therefore out of the parties' control). Plaintiff received continuous care over several months, where he was prescribed pain medication, antibiotics, sensitivity toothpaste, and even secondary treatment with a filling replacement.

The case relied on by Plaintiff does not change this analysis. In *Hudson v. McHugh*, 148 F.3d 859, 864 (7th Cir. 1994), the plaintiff suffered from epilepsy, an objectively serious medical condition. He notified the jail officers of his epilepsy, requested medication for his epilepsy, and due to their failure to provide it to him despite repeated requests, suffered a *grand mal* seizure. Here, in contrast, Plaintiff received continuous treatment for his objectively serious medical condition. He also had his tooth removed, preventing further risk of decay or infection. In short, he did not suffer a serious injury due to the Defendants' failure to act.

Plaintiff further argues that Dr. Orenstein engaged in a one size fits all care plan that did not fit Plaintiff's documented history of anxiety. [131] at 12. Instead, Plaintiff claims he should have been sent offsite immediately to receive IV sedation. This is unpersuasive. Dr. Orenstein was not required to immediately send Plaintiff offsite. In an exercise of his medical discretion, he attempted to treat Plaintiff's deep cavity with local anesthesia. Plaintiff has not provided evidence as to why this was so far from what a minimally competent professional would have done. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). Indeed, when Plaintiff was sent offsite for

13

tooth removal, Dr. Orenstein's referral *included* IV sedation, considering Plaintiff's anxiety.

In sum, Plaintiff has not met the subjective prong of the deliberate indifference standard as to Dr. Orenstein.

*B. Dr. Mitchell*

Plaintiff argues that there is a genuine dispute as to whether Dr. Mitchell knew of the substantial risk of harm to him, and she chose the less efficacious treatment causing unavoidable delay. [133] at 7.

Dr. Mitchell first attempted to alleviate Plaintiff's pain and tooth sensitivity by replacing the amalgam filling with a temporary medicated filling on July 14, 2017. [117] ¶ 20. This is evidence that Dr. Mitchell was trying to effectively treat Plaintiff's pain, not disregard a substantial risk to his health. She next replaced his filling on July 18, 2017, after the previous filling fell out two days prior. [130] at ¶ 19. Plaintiff was then scheduled for a follow-up visit on July 25, 2017, and was in fact seen at the dental clinic on that day. The records indicate Plaintiff was continuously seen at the dental clinic until he was referred offsite in September. The record therefore does not indicate Dr. Mitchell persisted in the "easier and less efficacious" course of treatment, nor that she "delayed effective treatment of [Plaintiff's] …dental condition." [133] at 12. To the contrary, she attempted to treat Plaintiff's complaints and repair the filling that fell out within two days of it doing so. Plaintiff has not established that there is

a question of fact that Dr. Mitchell showed deliberate indifference to his dental needs.[2]

## CONCLUSION

For the reasons explained above, this Court grants Defendants' motions for summary judgment [116]; [119]. The Clerk is directed to enter judgment in favor of Defendants and against Plaintiff. Civil case terminated.

E N T E R:

Dated: March 14, 2024

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge

---

[2] The Court does not need to reach the issue of qualified immunity.